**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                         Case No. 11-20129-50

CHAD ALLARD,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE**

Defendant Chad Allard pleaded guilty to conspiracy to manufacture and distribute methamphetamine, 21 U.S.C. §§ 846 and 841(a)(1). (ECF No. 2076, PageID.30467-68.) On May 21, 2018, the court sentenced him to sixty months imprisonment, a departure of ninety-one months from the lower bound of Defendant's advisory guideline range. (ECF No. 2240, PageID.31702; ECF No. 2076, PageID.30487.) His projected release date is September 27, 2022. (ECF No. 2561, PageID.43057.)

Defendant has filed a "Motion to Reduce Sentence." (ECF No. 2548.) He argues the health risks presented by the Coronavirus Disease ("COVID-19") while incarcerated at FCI Morgantown justify his immediate release. The government has filed a response and Defendant has replied. (ECF Nos. 2561, 2562.) The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. L.R. 7.1(f)(2). Defendant's motion will be denied.

A court may reduce a term of imprisonment if it determines "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The court

must also weigh the sentencing factors provided under 18 U.S.C. § 3553(a) and determine if a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) is the "applicable policy statement[]" with which courts must comply. 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 of the Sentencing Guidelines explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g) and must fit within at least one of four categories of "extraordinary and compelling reasons." Those categories are: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons." U.S. Sentencing Guidelines Manual § 1B1.13. The category of "Other Reasons" requires a determination from the Director of the Bureau of Prisons ("BOP") that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons" outlined in the other three categories. *Id.* § 1B1.13 cmt. n.1(D). The BOP has released Program Statement 5050.50 to guide its determination of extraordinary and compelling circumstances.[1] Federal Bureau of Prisons, U.S. Department of Justice, *Program Statement 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)* (2019).

---

[1] After the passage of the First Step Act in 2018, district courts in the Sixth Circuit remain divided over whether only the BOP Director may determine if a defendant's circumstances fall within the category of "Other Reasons." *Compare United States v. Bolze*, --- F. Supp. 3d ----, 2020 WL 2521273, at *7 (E.D. Tenn. May 13, 2020) (quoting U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(D)) ("[O]nly the 'Director of the Bureau of Prisons' can determine that such 'other reasons' exist."), *with United States v. Young*, --- F. Supp. 3d ----, 2020 WL 1047815 (M.D. Tenn. Mar. 4, 2020) ("[F]ederal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction.").

In all, a defendant seeking compassionate release must present "extraordinary and compelling" circumstances, must have § 3553(a)'s sentencing factors that weigh in his favor, must not be a threat to others as determined by § 3142(g), and must fit within one of the four categories in § 1B1.13 of the Sentencing Guidelines. 18 U.S.C. § 3582(c)(1)(A); U.S. Sentencing Guidelines Manual § 1B1.13; *see also United States v. Allen*, --- F. App'x ----, 2020 WL 5117947 (6th Cir. Aug. 27, 2020).

Defendant asserts that he underwent orthopedic surgery; he alleges he has "2 rods and 8 screws in his back, a T12 bone fusion, a titanium leg, a rod and a steel plate in lower left leg." (ECF No. 2548, PageID.42934.) He states he is prone to blood clots, has a heart murmur, hypertension (high blood pressure), and "a severely compromised immune system." (*Id.*) His medical records state that the he has a metal rod in his left leg due to a motor vehicle accident, which fractured his T12 vertebra. (ECF No. 2561-1, PageID.43081, 43097, 43107.) They also indicate that he has essential hypertension. (*Id.*, PageID.43143.) However, despite repeated checkups and diagnoses, there is no indication that Defendant is prone to blood clots, has a heart murmur, or has a compromised immune system, let alone one that is "severely compromised." (ECF No. 2548, PageID.42934.) The only mention of heart murmurs is a checkup on December 20, 2019, which listed "Murmurs" as "No." (ECF No. 2561-1, PageID.43126.) Defendant does not supplement his medical records with any evidence he suffers from these conditions.

Defendant does not fall within the "Medical Condition of the Defendant" category in § 1B1.13 of the Sentencing Guidelines. Defendant is not currently "suffering from a terminal illness." U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(A)(i). Nor is he

3

"suffering from a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care . . . and from which he . . . is not expected to recover." *Id.* § 1B1.13 cmt. n.1(A)(ii). The metal implants used to treat Defendant's orthopedic injuries and his essential hypertension are manageable. Hypertension is a common condition, affecting "[n]early half of adults in the United States . . . or 45%." *Facts About Hypertension*, Centers for Disease Control and Prevention, https://www.cdc.gov/bloodpressure/facts.htm (last visited Sep. 11, 2020). With proper monitoring, hypertension can be successfully treated and controlled. *See High Blood Pressure (Hypertension)*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/high-blood-pressure/diagnosis-treatment/drc-20373417 (last visited Sep. 11, 2020) ("Changing your lifestyle can go a long way toward controlling high blood pressure."); *Prevent and Manage High Blood Pressure*, Centers for Disease Control and Prevention, https://www.cdc.gov/bloodpressure/prevent_manage.htm (last visited Sep. 11, 2020) ("Whatever your age, you can take steps each day to keep your blood pressure in a healthy range."). Defendant does not provide evidence that his current medical conditions permanently and substantially reduce his ability to remain mentally aware and physically capable of providing basic self-care, and he does not satisfy the Sentencing Commission's policy statement. 18 U.S.C. § 3582(c)(1)(A); U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(A)(ii).

Defendant's circumstances are also not "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A). "Extraordinary" is defined as "exceptional to a very marked extent." *Extraordinary*, Webster's Third International Dictionary, Unabridged (2020). "Compelling" is defined as "tending to convince or convert by or as if by forcefulness of

4

evidence." *Compelling*, Webster's Third International Dictionary, Unabridged (2020). A court in this district has described the requirements of "extraordinary" in the context of compassionate release "as beyond what is usual, customary, regular, or common," and a "'compelling reason' as one so great that irreparable harm or injustice would result if the relief is not granted." *United States v. Sapp*, Case No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020) (Leitman, J.).

Defendant's medical state is not unusual, extreme, or untreatable. Although he experienced bodily injury due to prior motor vehicle accidents, for a forty-four-year-old American, Defendant has relatively manageable health issues. Any conditions he does have, such as hypertension, have received diagnosis and treatment. (*See, e.g.*, ECF No. 2561-1, PageID.43081-84.)

The outbreak of COVID-19 does not change the court's analysis. Defendant's location of incarceration, FCI Morgantown, has no active cases of COVID-19. *COVID-19: Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Sep. 11, 2020). It has never had a confirmed case among its prisoner population. *Id.*

These successful outcomes could be the result of the many countermeasures the BOP has taken throughout the federal prison system. Inmates' internal movement is suspended, subject to narrow exceptions such as medical examinations; newly arriving inmates who are asymptomatic are tested and quarantined; symptomatic inmates with exposure risk are isolated, treated, and tested; social visits are canceled. *BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Sep. 11, 2020);

Federal Bureau of Prisons, U.S. Department of Justice, *Correcting Myths and Misinformation About BOP and COVID-19* (2020). In addition, the seriousness of the outbreak in Morgantown, West Virginia, is much less than many parts of the country. Monongalia County, where Morgantown is located, has a total of five COVID-19 deaths. *COVID-19 United States Cases by County*, Johns Hopkins University of Medicine, https://coronavirus.jhu.edu/us-map (last visited Sep. 11, 2020).

Defendant asserts generally, and without evidence specific to FCI Morgantown, that the BOP's system of COVID-19 testing is inadequate. Yet, as described above, it is BOP policy to provide testing for symptomatic inmates and asymptomatic inmates who are newly arriving. *BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Sep. 11, 2020). Institutions throughout the federal prison system have tested and reported many positive and recovered cases of COVID-19 infection, sometimes reaching hundreds of cases. *See Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Sep. 11, 2020). Defendant does not demonstrate that FCI Morgantown differs from the rest of the federal prison system, or that the BOP is in serial violation of its own policies.

Further, while testing is undoubtedly imperfect (as it is in free society), at a minimum if a prisoner develops serious symptoms requiring medical attention, the court has good reason to believe the BOP will become aware of the existence of the disease whether or not the inmate was previously tested. Thus, the fact that there have been *zero* reported inmate cases at FCI Morgantown over the course of the past six months is significant.

In all, the potential that Defendant could contract COVID-19 and develop serious symptoms, and the possibility that FCI Morgantown's reported numbers are unhelpful, do not create circumstances warranting the extraordinary remedy of compassionate release. 18 U.S.C. § 3582(c)(1)(A). Defendant's request will be denied.

IT IS ORDERED that Defendant's "Motion to Reduce Sentence" (ECF No. 2548) is DENIED.

                                        s/Robert H. Cleland           /
                                        ROBERT H. CLELAND
                                        UNITED STATES DISTRICT JUDGE

Dated: September 15, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 15, 2020, by electronic and/or ordinary mail.

                                        s/Lisa Wagner               /
                                        Case Manager and Deputy Clerk
                                        (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\18-20348.ALLARD.MotiontoReduceSentence.RMK.docx